EHRLICH, Chief Justice.
Under the provisions of article V, section 9, of the Florida Constitution, it is the responsibility of the Florida Supreme Court to determine the necessity of increasing or decreasing the number of judges required to effectively and efficiently consider and dispose of cases filed for consideration before the respective courts. To this end, we have analyzed case filings and considered other pertinent data. We have evaluated the growth in the workload of the State Courts System over the past five to six years, in light of additional judgeships which have been authorized each year by the Florida Legislature. This certification is predicated on the rapid and considerable growth in caseloads of the various district courts of appeal, and the circuit and county courts.
Annual filings in Florida’s district courts of appeal have grown from a total of 13,-438 in 1984 to 16,003 in 1988, an increase of 19%. The projected filings for 1989 for these courts total 17,279 cases, which would represent a 29% increase since 1984. While the 1988 Legislature authorized seven additional district court judgeships, effective January 1989, the total number of district court judges has grown by only 15% over the same period.
The circuit courts handle the most serious. of Florida’s criminal cases, all family matters, a wide range of civil matters involving disputes valued in excess of $5,000, probate and guardianship concerns, and delinquency and dependency cases involving Florida’s children and youth. These courts have realized consistent and generally substantial increases over the past six years in every one of these categories of cases, with the exception of dependency proceedings. Total circuit court filings have grown from 513,484 in 1983 to 703,257 in 1988, an increase of 37%. The 1989 forecast for the circuit courts is expected to total 743,586 cases, which would represent an increase of 45% since 1983. During the same period, the number of circuit judges increased by 12.7%, or a total of 43, failing to keep pace with the substantial growth in workload.
Criminal filings over the past two years at the circuit court level have shown the most dramatic and alarming increases of all case types. In 1986, 133,912 felony cases were filed in the circuit courts. That figure increased to 146,818 in 1987, and 172,175 in 1988. Drug-related offenses and those involving the use and trafficking of crack cocaine, in particular, accounted for much of this increase. The number of drug-related crimes grew by 75% in that two-year period, from a 1986 total of 27,520 cases to 47,871 cases in 1988. Between 50 and 75% of prosecutions for other types of offenses, including burglary, theft, and robbery, are thought to be drug-related, that is they are the result of persons seeking funds for the purchase of crack cocaine or other drugs. Juvenile delinquency filings, too, have shown consistent increases over the past five years, ranging from 8 to 10% annually. Here, too, a large share of the delinquency filings is attributable to drug-related offenses. Data provided by the Department of Health and Rehabilitative Services shows an increase of 385% for felony-equivalent, drug-related referrals over the past two years. These trends have had á significant effect on the ability of the courts, and the criminal justice system as a whole, to effectively deal with Florida’s growing crime problem. Judges have been reassigned to hear criminal and juvenile matters, leaving civil dockets and calendars for probate and guardianship proceedings backlogged. The limited availability of judicial manpower to conduct trials may be contributing to the substantial increase in the number of pleas that are entered in criminal cases, which might not be accepted except for the exigencies created by this unprecedented growth in crimes related directly or indirectly to *821 drugs. This Court is advised by judges and prosecutors in the trial courts that there is a far greater acceptance of pleas to lesser offenses than is deemed desirable, for this very reason. In certain circuits, those defendants whose cases are set for trial are waiting in jail for longer periods, at a time when many of Florida’s jails are overcrowded and operating under population caps imposed by the federal courts.
As with the district and circuit courts, Florida’s county courts have realized large increases in case filings. There were a total of 3,205,665 cases filed in the county courts in 1982. That figure jumped by approximately 1,000,000, or 29%, to around 4,140,175 in 1988. The increases in county court workload have been most profound in the urban counties and other “growth” areas of the state, particularly in certain counties on the eastern seaboard and southwest Florida. In addition to having to keep pace with the growing number of cases at the county court level, Florida’s county judges in these and other counties throughout the state have frequently been assigned on a temporary basis to handle cases at the circuit court level because of the shortage of circuit court judges. In 1988, the equivalent of approximately 17 judge years of county judge time was spent hearing circuit matters. However, since 1982 just 23 new county judgeships have been authorized, an increase of only 11% in the size of the county court judiciary.
In view of the significance of the foregoing facts and trends, this Court is certifying the need for five district court of appeal judges, fifteen circuit court judges, and six county judges. The comparison of the requests for new judges filed by the respective courts and the judgeships certified as needed, for each year of the biennium, is as follows:
REQUESTS/SUPREME COURT CERTIFICATION*
[[Image here]]
*822 [[Image here]]
Rev — Review for consideration in second year.
The need for additional judicial manpower at the district court of appeal level continues to be critical, notwithstanding the addition of seven new judges, effective January 1, 1989. Those were the first judge-ships added to the district courts of appeal since 1982. We are of the opinion that the five judgeships recommended herein are crucial in order to bring developing backlogs under control while enabling judges to commit sufficient time to give due consideration to each case.
Florida Rule of Judicial Administration 2.035(b)(2)(A) establishes “a primary case load of 250 filings per judge” as the level at which additional judgeships are required. As Florida’s district courts sit in panels of three, each judge is expected to be conversant with the briefs, record on appeal, and precedent related to three times the number of cases which he or she may handle as primary judge. The inability of the courts to control the number of cases filed and the necessity of dealing with considerably in excess of the 250 filings per judge standard, adopted by rule of this Court, will likely produce two unacceptable results. First, the assignment of substantially in excess of 250 filings per judge to each judge on a three judge panel will move Florida’s district courts toward what could effectively be single-judge panel decisions. Judges who do not have primary assignments for the preparation of the opinion in a case will simply not have sufficient time to play a meaningful collegial role in the development of a decision and an opinion in that case. Further, judges will be forced to rely on their law clerks to a greater extent than is desirable in the preparation of draft analyses of cases and the reading of the record on appeal in each case, as well as associated research. Florida’s appellate judges must have sufficient time to properly review and study all cases assigned to their panels, not just those for which they are principally responsible, and to bring to each case the scholarship that every litigant has a right to expect. The quality of justice they dispense collectively is dependent upon the time each judge can devote to every case. A judicial overload inevitably shortchanges the litigants and the public and should not be tolerated.
District court filings per judge in 1989 are projected to range between 308 for the First District Court of Appeal and 330 and 400 for the Third and Fifth District Courts of Appeal, respectively, at current staffing levels. If the five judges certified as necessary were authorized and available to assist with the projected case loads for these courts in the 1989 calendar year, the filings per judge for the district courts would be in the range of 275 to 315. However, it is unlikely that the requested judicial positions, even if authorized, will be effective any earlier than January 1990. We expect that 1990 will see an additional 1,000 cases added to the collective workload of the district courts; a workload sufficient to require yet another four judge-ships.
Two other factors must be considered relative to this Court’s request on behalf of the First, Third, and Fifth District Courts of Appeal. First, pending case inventories for the district courts have shown dramatic increases since 1985. As of June 1988, the total number of cases pending in the district courts has grown to 10,523, an increase of 31.3% from 8,015 in June 1985. The legislature has provided sufficient resources for office automation systems that enable judges and court staff to avail themselves of word processing and automated case management support, as well as automated legal research tools. Several have experimented with “fast track” procedures *823 designed to expedite the handling of certain priority cases. The Fourth District Court of Appeal, with a grant from the State Justice Institute, is in the process of implementing an experimental appellate mediation program for civil cases. While the district courts have worked diligently to increase their output, the number of dispositions by the district courts has increased only 8% from 1985 through 1988.
Second, the mixture of cases in the First, Third, and Fifth District Courts of Appeal further supports our certification. The First District Court of Appeal has exclusive jurisdiction of worker’s compensation appeals. That court also receives a much larger number of administrative matters and appeals of state agency rulings than the other district courts. This latter type of litigation involves a broad range of issues and can be neither evaluated nor disposed of in a routine fashion. The Third District Court of Appeal has an unusually high percentage of civil matters, compared to criminal filings. Unlike criminal appeals, which often involve Anders * questions and more routine postconviction matters, such civil proceedings generally demand more extensive and original research. We have limited the certification for the second year to one judgeship for the Second District Court of Appeal but will review and reconsider the full request of that court or the others next year.
Florida Rule of Judicial Administration 2.035(b)(1) sets forth the criteria for certification of need for judges at the trial court level. As with certifications of recent years, we have placed the greatest weight on statistical data reflecting the growth and composition of case loads filed in the various circuits and counties. We have determined that the most consistent and reliable factor at the circuit court level is total case filings per judge. Criminal, civil, probate, guardianship, and juvenile case filings for each circuit are also evaluated by applying different weights reflecting the differential requirements for judicial hearing time and attention. The filings per judge statistics for the county courts are adjusted to exclude worthless check offenses and civil traffic infractions. Other factors, in addition to those prescribed in Florida Rule of Judicial Administration 2.035, include the extent of use of county and retired judges on temporary assignment; the availability of supplemental hearing resources (child support hearing officers, commissioners, and general or special masters); the extent of reliance on mediation and arbitration to resolve cases; and special local circumstances that affect case handling.
As recommended by the Supreme Court’s Court Workload and Statistics Committee, we used 1,865 circuit filings per judge as a threshold at which there is a presumptive need for additional judgeships. The average workload for circuit judges in Florida grew from 1,600 filings per judge in 1984 to approximately 1,900 filings per judge in 1988, an increase of 19%. Based on forecasts of circuit filings for 1989 and current staffing levels, every court for which certification is made, with the exception of the Eleventh Judicial Circuit, will have in excess of 1,950 filings per judge in that year. Six of the courts for which certification is made will have in excess of 2,000 filings per judge. For these reasons, the certification for the circuit courts is greater in number than in past years. It is still considered conservative given the substantially increased workloads these courts face. This Court was particularly conservative in its request for only ten circuit judgeships last year, noting that to be “a ‘barebones’ minimum.” In re Certification of Judicial Manpower, 521 So.2d 116 (Fla.1988). Several of the courts for which one or more judges are certified this year, including the Fifth and Fifteenth Judicial Circuits, could well have justified one or more positions last year.
The Eleventh Judicial Circuit is projected to have 1,803 filings per judge in 1989, which is below the certification threshold. Yet this court continues to experience problems which justify their request for an additional judge. First, the court, at county expense, employs in excess of thirty *824 full-time interpreters who are proficient in several languages to translate testimony and instructions and rulings from the bench in judicial proceedings. Well over 125,000 translations are conducted each year. This slows the judicial process and impedes judicial productivity. Second, the demands of administering a court of close to 100 judges are substantially greater than for most other circuits. Considerable case handling time is lost by the chief and divisional administrative judges in order to attend to administrative details.
Two courts that requested additional circuit judges for fiscal year 1989-90, but for which no certification is made this year, are the Second and Fourth Judicial Circuits. Both courts may well be in need of additional judicial manpower, but statistical data reported for those courts was not deemed reliable. Audits of reporting procedures conducted in both Leon and Duval Counties by staff of the Office of the State Courts Administrator over the past year indicated a lack of compliance with the standards established for the Summary Reporting System Statistics, which produces most of the case-related data for certification. While the clerks’ offices in these counties have taken steps to resolve reporting discrepancies, additional audits will be necessary to determine if reported data is reliable. Thus, the need for additional judges for these circuits will be reconsidered next year, if the reporting problems are eliminated and accurate amended reports are filed.
Six county judges are requested for fiscal year 1989-90. In evaluating the need for such positions we relied principally on filings data adjusted to include only criminal, civil, and DUI cases. Worthless check cases, non-DUI criminal traffic and civil traffic infractions were excluded because of their limited requirements for judicial time, the diversion of large numbers of worthless check cases in selected circuits, and the variability and volume of such cases reported from county to county. For purposes of this certification, we used 4,000 filings per judge as the threshold at which there is a presumptive need for additional positions. Courts with such case loads are judged to be operating at capacity. Most had scant time to assist with case assignments at the circuit court level. Where the judges in these counties did help with circuit court workload, it was likely to the detriment of case processing in the county courts. All counties for which certification of need is made are projected to have between 4,100 and 5,900 adjusted filings per judge in 1989. The workloads in Palm Beach and Broward Counties are sufficient to justify more than one additional judge, and a second judge is certified for each in fiscal year 1990-91. Pinellas, Volu-sia, Orange, and Charlotte Counties also appeared to be operating near capacity, and the judges in those counties were not generally available to provide support at the circuit level. The requests of these courts will be given serious consideration as next year’s certification is formulated. We will also reevaluate the criteria applied in certifying the need for additional county judges at that time.
In formulating this certification, we considered the possible impact of implementation of the recently adopted amendment to the Florida Constitution authorizing the establishment of a system of civil traffic infraction hearing officers. Our position is that such hearing officer positions, whether established through state or local funding, would not be effective in handling cases early enough to lessen the need for those county court judges certified as necessary herein. Certainly, future certifications will have to measure the extent to which civil traffic infraction hearing officers free county judges to hear other matters.
It must be pointed out that Florida trial courts have addressed workload pressures by relying heavily on the temporary assignment of retired judges. Just under 4,000 days of service were provided by retired judges in fiscal year 1987-88. Demand for their services far outstripped appropriations and this trend is expected to continue in the future. This is particularly true as the Office of the Statewide Prosecutor is now staffed to try a greater number of cases than in prior years. Such cases gen *825 erally do not conclude in pleas and result in lengthy trials with multiple defendants, which strain existing judicial resources. The Statewide Prosecutor has requested that approximately 400 days of retired judge time be allocated to conduct these trials. Requests by chief judges for the assignment of retired judges to hear such cases are expected to become routine. For the foregoing reasons, the Court is seeking full funding of its fiscal year 1988-89 budget request, for approximately 4,400 days of retired judge service. This is viewed as a critical companion measure of the judicial certification.
In conclusion, it must be emphasized that the chief judges of the trial and appellate courts were urged to ask for only the number of judges they feel are truly necessary to keep up with increases in case filings and avoid further backlogs. It is the view of this Court that they have responded in good faith. Full funding for the requests certified is deemed absolutely essential if Florida’s courts are to fulfill their constitutional duties to try cases in a fair, impartial, and timely manner.
overton, McDonald, shaw, BARKETT, GRIMES and KOGAN, JJ., concur.

 Recommended certification in ODinion.

 Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).